IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,    :
:
v.                           :        CRIMINAL INDICTMENT NO.:
:        2:18-CR-00042-RWS-JCF
HUGO VINCENTE TORRES         :

## REPORT AND RECOMMENDATION

This case is before the Court on Defendant's Motion To Suppress Search. (Doc. 23). For the reasons discussed below, it is **RECOMMENDED** that Defendant's motion be **DENIED**.

## Procedural History

An Indictment filed November 15, 2018 (Doc. 1) charges Defendant and his co-defendant Sara Cea with possession of methamphetamine with intent to distribute on August 31, 2017 (Count One) and with possession of a firearm in furtherance of a drug trafficking crime on August 31, 2017 (Count Two). The Indictment also charges Defendant with possession of a firearm by a convicted felon on August 31, 2017 (Count Four). Defendant moved to suppress evidence seized by law enforcement officers from his vehicle without a warrant. The Court conducted a hearing on Defendant's motion on July 18, 2019 (*see* Doc. 34), and the transcript was filed on August 7, 2019 (Doc. 38).[1] The Government filed a post-hearing brief

---

[1] References to the transcript will be designated as "Tr. __."

1

(Doc. 41), and Defendant responded (Doc. 45).  With briefing complete, the Court now considers the merits of Defendant's motion.

## Discussion

I.  **Facts**[2]

On August 30, 2017, deputies with the Banks County Sheriff's Office Uniform Patrol Division made multiple arrests, and one of the arrestees ("confidential informant" or "CI") said that they[3] "had information that they were willing to provide to assist them with their charges." (Tr. 7-8).  The CI told Banks County Sheriff's Office Investigator Perry Shirley that they and a co-defendant "were waiting on a substantial delivery of methamphetamine to be brought to Banks County" and that the funds to purchase that methamphetamine had already been paid a day or two before.  (Tr. 8-9).  The CI told Shirley that the woman from whom they were obtaining the methamphetamine had given the CI a cell phone, and the woman was identified in the cell phone as "El Chapo."  (Tr. 9).  A GBI analyst determined that "El Chapo" was Sara Cea, Defendant's co-defendant in this case, and the CI positively identified Sara Cea from a photograph as the person from whom the CI

---

[2] These facts are taken from the hearing testimony of Captain Gerald Watson with the Banks County Sheriff's Office; Jonathan Segars with the GBI Appalachian Regional Drug Enforcement Office task force; Cary Way, an investigator with the Banks County Sheriff's Office; and the hearing exhibits (Docs. 35-1 through 35-4).

[3] The hearing witnesses referred to the CI as "they" in order to avoid disclosing that person's gender.  (Tr. 8).

had been obtaining methamphetamine.  (Tr. 9, 27).  The CI told Shirley that over a 12-week period they had obtained methamphetamine from Cea several times and would meet at the Days Inn around the Banks Crossing area, i.e., where U.S. Highway 441 crosses Interstate 85 in Banks County, pick up the methamphetamine, and then the CI would travel north into South Carolina to resell it.  (Tr. 10-11). Typically the CI would get a room and then give Cea the room number and they would go to the room for the transaction and then "disperse from there."  (Tr. 11).

On August 31, 2017, Investigator Shirley told then-Sergeant Gerald Watson of the Special Operations Unit about the CI's information.  (Tr. 7-8, 11-12).  Watson and Shirley then worked on a plan to try to get Cea to deliver methamphetamine to the CI, and they contacted Jonathan Segars with the GBI Appalachian Regional Drug Enforcement Office task force about the investigation.  (Tr. 12, 24-26).  Banks County deputies went to the Days Inn on August 31st and got two adjoining rooms with the informant in one room and the surveillance cover arrest team in the other. (Tr. 12).  They also had surveillance and arrest teams outside the building, including task force agents Segars and Shilo Crane.  (Tr. 13, 15-16, 28).  The plan was to arrest Cea after she came to the room and transferred the methamphetamine.  (Tr. 12-13). They had also learned that Cea had active felony warrants for aggravated assault from Gwinnett County.  (Tr. 13, 35).

The CI texted with Cea to arrange to meet her at the Days Inn and Cea was supposed to be bringing a pound of methamphetamine, and eventually the CI received a text saying that Cea was on her way. (Tr. 13-14, 28). At about 11:45 p.m. Cea and another person pulled into the parking lot in a Jaguar, and Cea contacted the CI and requested to speak with one of the CI's associates and then left and drove across the road to a Walmart parking lot until the CI's associate contacted Cea. (Tr. 16-17, 29, 36, 44). Once the car parked there, the driver—later identified as Defendant—got out and went inside Walmart, while Cea remained sitting in the car in the passenger seat. (Tr. 17, 20, 30-31). Cea got out of the vehicle, "was fumbling around with something in the back seat and got back into the passenger seat." (Tr. 31, 37). Sergeant Watson, Chief Deputy Shawn Wilson, Lieutenant Cary Way, and Agents Segars and Crane approached the car since they "already had felony arrest warrants" for Cea. (Tr. 17, 31, 45, 47). As the officers approached, they observed Cea smoking a cigarette in the car, and as they got closer, they could smell the odor of burnt marijuana. (Tr. 17-18, 31, 37-38). Once they got to the car and had arrested and handcuffed Cea, they could smell the odor of burnt marijuana coming from within the vehicle and on her person. (Tr. 19, 46). Watson was a marijuana recognition expert and marijuana examiner certified by the GBI for about six years, i.e., he was a marijuana recognition expert so he could testify to whether or not a substance is marijuana. (Tr. 18). He has received training on identifying

marijuana by smell, both unburned or fresh marijuana and burned or smoked marijuana, and he was a K-9 handler for several years working with narcotic detection dogs. (Tr. 19). Thus, "based on his training, experience, and dealing with marijuana for several years," he "know[s] what the odor of marijuana smells like." (Tr. 18). Agent Segars also had 10 years of experience and had smelled the odor of burnt marijuana on "[n]umerous occasions. (Tr. 32). Lieutenant Way also recognized the odor of burnt marijuana from his knowledge, training, and experience, including destroying it by burning after taking down marijuana grows. (Tr. 46).

After they arrested Cea, GBI Agents Segars and Shilo went inside Walmart with several deputies to find Defendant, and when they found him, they detained him "due to him . . . getting out of the vehicle and the overwhelming odor of marijuana," then escorted him out of the Walmart and placed him in a patrol car. (Tr. 20, 31-33). Meanwhile Lieutenant Way searched the inside of the car and found a firearm under the front edge of the driver's seat, a firearm in the glove box, a plastic container in a backpack on the back seat with a large quantity of suspected methamphetamine, and a partially smoked marijuana cigarette near where Cea had been sitting. (Tr. 19-20, 23, 33, 47-51).

At that point the Walmart parking lot was very crowded, with people "everywhere," parking close to the subject vehicle, and some walking up asking

what was going on, so Chief Wilson decided to move the car to the sally port at the Sheriff's Office for officer safety since they could not contain the scene at the Walmart, and they did not know who might have been traveling with the suspects. (Tr. 21, 33-34, 51). Both Cea and Defendant were under arrest and there was no one present to whom the officers could have released the vehicle, so they called a tow service and had the car towed to the Sheriff's Office, where it was searched and additional evidence was found and seized. (Tr. 22, 33-34; Govt. Ex. 4).

## II. <u>Analysis</u>

Defendant argues that the Court should suppress all evidence seized from his vehicle without a warrant because probable cause did not justify his arrest, probable cause did not exist to justify the vehicle search on the scene, and because the initial search was not lawful, the seizure of the vehicle and subsequent search were unlawful as well. (*See* Doc. 45).

### A. <u>Vehicle Searches</u>

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. "The 'ultimate touchstone of the Fourth Amendment is reasonableness.' " *United States v. Walker*, 799 F.3d 1361, 1363 (11th Cir. 2015) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). Where a seizure is made

without a warrant, as in this case, the burden is on the government to "demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the fourth amendment." *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983).

The exception the Government relies on to justify the warrantless search of Defendant's vehicle is the automobile exception to the warrant requirement.[4]  That exception "allows the police to conduct a search of a vehicle if (1) the vehicle is readily mobile; and (2) the police have probable cause for the search." *United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007).  "[O]fficers can [also] search any container in an operational car without a warrant as long as they have probable cause to believe that the container holds evidence of a crime." *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005).  "The mobility requirement is satisfied whenever the vehicle to be searched is operational." *United States v. Garcia*, 433 Fed. Appx. 741, 744 (11th Cir. 2011) (unpublished decision) (citing *United States v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003)).  "A functioning vehicle is considered to be 'mobile' even if it already has been secured by the police." *Id.* (citing *Michigan*

---

[4] The Supreme Court in *Arizona v. Gant*, 556 U.S. 332, 343 (2009) "placed limitations on searches incident to arrest; it did not affect the longstanding law regarding the automobile exception to the search warrant requirement." *United States v. Ilonzo*, No. 1:12-CR-276-SCJ-GGB, 2015 U.S. Dist. LEXIS 136783, at *49 (N.D. Ga. May 18, 2015), *adopted by* 2015 U.S. Dist. LEXIS 135895 (N.D. Ga. Oct. 6, 2015).

*v. Thomas*, 458 U.S. 259, 261 (1982) and *United States v. Birdsong*, 982 F.2d 481, 483 (11th Cir. 1993)).  "Police have probable cause to search a vehicle when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle."  *Id.* (internal quotations omitted).

As an initial matter, Defendant's vehicle was clearly operational as the officers observed Defendant drive it to the Days Inn and then the Walmart.  Probable cause also supports the officer's search of the vehicle.  Captain Watson, Agent Segars, and Lieutenant Way credibly testified that as they approached the Jaguar in which Cea was seated, they observed Cea smoking a cigarette, and they smelled the odor of burnt marijuana coming from inside the car and continued to smell that marijuana odor—which they recognized from their experience and training—as they arrested Cea.  (Tr. 17-19, 31, 37-38, 46).  Their detection of the odor of marijuana from inside the vehicle gave them probable cause to search the car.  *See United States v. Dixon*, 901 F.3d 1322, 1339 (11th Cir. 2018) (explaining that an officer's credible testimony that he smelled marijuana can establish probable cause, and finding that the officers had probable cause to search the car where the officer testified that he smelled marijuana when he approached passenger side of door and saw small buds of marijuana on floorboard); *United States v. Williams*, 731 Fed. Appx. 863, 867 (11th Cir. 2018) (explaining that "[i]n a long line of cases, we have held that the smell of marijuana coming from a person's house or vehicle establishes probable

8

cause for a search," and finding that officer's testimony that he smelled marijuana coming from the vehicle supported probable cause to search it); *United States v. Ward*, 722 Fed. Appx. 953, 962 (11th Cir. 2018) (explaining that "[i]t is also well established that if a police officer detects the odor of marijuana, this gives rise to probable cause," and finding that officers had probable cause to search the vehicle because they testified "that they smelled marijuana emanating from the vehicle prior to unlocking or opening the doors"). Thus, based on the credible testimony of the officers in this case that they smelled marijuana coming from Defendant's vehicle as they approached it and as they arrested Cea, the undersigned finds that the officers in this case had probable cause to search it.[5]

Moreover, "[o]nce probable cause exists to search the vehicle, the police may search all part of the vehicle, and any containers therein, where the object of the search might be found." *United States v. Baldwin*, 774 F.3d 711, 720 (11th Cir. 2014) (citing *Wyoming v. Houghton*, 526 U.S. 295, 301 (1999) and finding that police were authorized to search duffel bag found in car because they had probable

---

[5] Defendant argues that the officers did not need to search the car for the source of the marijuana odor because they knew what it was, i.e., the marijuana cigarette Cea was smoking. (Doc. 45 at 6). That argument is without merit because once the officers smelled the odor of marijuana from inside the vehicle, they had probable cause to believe that the vehicle contained marijuana. They were not required to conclude that the marijuana cigarette Cea was smoking was the only marijuana in the vehicle, particularly in light of Agent Segars' observation of Cea going to the back of the vehicle and then returning to the passenger seat (Tr. 31, 37) before the officers observed her smoking a cigarette and detected the marijuana odor.

cause to search the vehicle); *see also United States v. Pina*, 648 Fed. Appx. 899, 902 (11th Cir. 2016) (explaining that "[p]robable cause 'justifies the search of every part of the vehicle and its contents that may conceal the object of the search' " (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)); *United States v. Reeves*, 604 Fed. Appx. 823, 826-27 (11th Cir. 2015) (finding that because the officer had probable cause to search the car for drugs, he "was permitted to search any part of the backpack [found in the car] in which drugs may be found"). Thus, the officers were authorized to search the back pack and the glove compartment in which they found the suspected methamphetamine and gun.

Furthermore, under the automobile exception to the warrant requirement, the officers were allowed to transport the car to the Sheriff's Office to continue searching it. "In *Chambers v. Maroney*, 399 U.S. 42 (1970), [the Supreme Court] held that when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *Michigan v. Thomas*, 458 U.S. 259, 261 (1982). The Court "firmly reiterated this holding in *Texas v. White*, 423 U.S. 67 (1975)." *Thomas*, 458 U.S. at 261. "It is thus clear that the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have

been driven away, or that its contents would have been tampered with, during the period for the police to obtain a warrant." *Id.*

The officers in this case were therefore authorized to stop the search of Defendant's car in the Walmart parking lot for officer safety and to transport it to the Sheriff's Office to continue searching it, even after the occupants had been arrested and taken into custody. *See, e.g.*, *United States v. Collins*, 699 Fed. Appx. 904, 905-06 (11th Cir. 2017) (rejecting defendant's argument that vehicle was no longer mobile where it had been transported to the police station due to safety concerns after defendant's arrest because "[i]t is well established that once officers have probable cause, the justification for a warrantless automobile search does not evaporate when the vehicle is transported to the police station to be searched" (citing *Thomas*, 458 U.S. at 261); *United States v. Parrado*, 911 F.2d 1567, 1569, 1571 (11th Cir. 1990) (finding that warrantless search of van impounded at DEA headquarters was authorized under automobile exception); *United States v. Black*, No. 8:17-cr-513-T-27CPT, 2018 U.S. Dist. LEXIS 143592, at *11-12, 41-42 (M.D. Fla. June 7, 2018) (finding that officers had probable cause to search vehicle without warrant, even after driver was arrested and car was impounded), *adopted by* 2018 U.S. Dist. LEXIS 143704 (M.D. Fla. Aug. 22, 2018); *United States v. Brumfield*, No. 1:10-CR-053-CAP-ECS, 2011 U.S. Dist. LEXIS 137834, at *12-13 (N.D. Ga. Feb. 18, 2011) (finding that "the automobile exception validates the warrantless

entry of the vehicle in the impound lot" because "[i]t makes no difference that at the time the vehicle was searched it had been impounded or that there were no exigent circumstances necessitating a warrantless search"), *adopted by* 2011 U.S. Dist. LEXIS 136553 (N.D. Ga. Nov. 29, 2011).

Because the officers had probable cause to search Defendant's vehicle based on the smell of marijuana coming from inside the vehicle, the officers' searches—both at the Walmart parking lot and at the Sheriff's Office—did not violate the Fourth Amendment.  It is therefore **RECOMMENDED** that Defendant's motion to suppress evidence seized by law enforcement officers from the Jaguar he was driving on August 31, 2017 be **DENIED**.

## B.   Defendant's Arrest

Defendant argues that when he was taken into custody in the Walmart there was no probable cause to justify his arrest because the officers did not smell marijuana on him.  (Doc. 45 at 4, 8).  Defendant has not shown that the seizure of the evidence from the car he was driving occurred because of his allegedly unlawful arrest, however, nor has he described evidence that the officers seized from *him* (as opposed to the car) as a result of his arrest.  In his initial motion, Defendant only challenged "the warrantless search of his vehicle and all evidence resulting there from" (Doc. 23); he did not challenge his arrest or assert that any evidence was seized as a result of that arrest.  As discussed above, the warrantless search of the

12

car was authorized under the automobile exception, and that exception justified the search regardless of Defendant's custodial status.  The probable cause to search the car was established when the officers smelled the marijuana, before they found Defendant in the Walmart.

Moreover, even if the officers did not have probable cause to arrest Defendant when they first encountered him inside the Walmart, they had at least reasonable suspicion to detain him to investigate the "overwhelming odor of marijuana" in his vehicle (Tr. 33) pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny.  *See, e.g.*, *Black*, 2018 U.S. Dist. LEXIS 143704, at *8 n.4 ("The smell of marijuana may provide reasonable suspicion for further investigation of possible criminal conduct, including the 'brief detention of a vehicle and its occupants and a limited pat-down' " (quoting *United States v. White*, 593 F.3d 1199, 1203 (11th Cir. 2010)). Meanwhile, the search of the vehicle yielded the discovery of a large amount of suspected methamphetamine and firearms.  (Tr. 19-20, 23, 33, 47-51).  Probable cause then supported Defendant's arrest.  The undersigned therefore finds that the officers did not violate Defendant's Fourth Amendment rights by arresting him, nor did the searches of the vehicle and seizure of evidence from therein result from an allegedly unlawful arrest.  Accordingly, to the extent that Defendant contends that evidence seized from the vehicle must be suppressed due to his allegedly unlawful arrest, it is **RECOMMENDED** that Defendant's motion be **DENIED**.

## **Summary**

For the reasons discussed above, it is **RECOMMENDED** that Defendant's Motion To Suppress (Doc. 23) be **DENIED**.

**IT IS SO REPORTED AND RECOMMENDED** this 2nd day of December, 2019.

/s/ J. Clay Fuller
J. Clay Fuller
United States Magistrate Judge